JOHN H. WALTON, *et al.*, plaintiff, *vs.* MARION BETHUNE, *et. al.*, defendants in error.

M. hands B. as his attorney and agent a note on G. for collection, with instructions to pay the proceeds, when collected, first to certain named creditors, and then the surplus, if any, to his other creditors generally. These named creditors surrendered to B. their claims against M., and B. gave them his written obligation to pay them out of the proceeds of said note.   These amounts and B's fees and charges absorbed the amount of the note.   Before this note was paid, but after this arrangement was made, the other creditors sued out attachments against M., and garnisheed G. and B.   B. prayed injunction against these garnishments.   *Held*, that by this arrangement, the note of G. passed as the property of the named creditors, with a remainder, if any, to the other creditors, and the injunction should be made perpetual.

Exception to auditor's report.    Decided by JAS. S. WALKER, Esq., Judge *pro hac vice*.    Talbot Superior Court.    September Term, 1867.

Lemuel Miller, of said county, pretended to be going to Florida to return, and left with Bethune, as his attorney at law, two notes on Powell and three notes on W. R. Gorman, with directions to Bethune to pay out the money when collected to certain creditors of Miller in a certain designated order, and then with the balance to pay off any proper claims against him, Miller.

These creditors applied to Bethune, and gave up to him their claims against Miller, in consideration of his written obligations to pay them out of the proceeds of said notes according to said designated order.    These obligations Bethune gave because the creditors were threatening to sue out

attachments against Miller, when Bethune verily believed Miller would return, and that such process was unnecessary. Miller in fact went to Texas. These obligations, together with Bethune's fees for collecting the money on Gorman's notes, and suing Powell's notes to judgment, and reasonable fee for this present litigation, etc., cover the whole amount of said notes left with him.

Notwithstanding these facts, said creditors having learned that Miller would not return sued out attachments against him, and garnisheed Gorman and Bethune, and also levied on one hundred and seventy-six acres of land, occupied by Powell, and held by him under a bond for titles from Miller. (It was for this land that Powell gave his said notes to Miller.) At the time of the service of these attachments Gorman had not paid all of his notes, and Powell's were in judgment unpaid, and because Miller was not at hand to file a deed in terms of the law, the judgment could not be then enforced.

Bethune feared that Gorman might be compelled, by said garnishments, to pay said balance into Court, and that he might be compelled to pay into Court what he had collected, and had on hand, and what he had out of said collections paid out to creditors pursuant to his said instructions.

Having acted in good faith in the matter he prayed injunction against all the attaching creditors till his *status* could be fixed by a decree of the Court, that said arrangement should be carried out as Miller directed, and for general relief suited to his case. He further prayed that a decree be passed allowing said land levied on and sold under said judgment without filing a deed. Judge Worrill being one of the attaching creditors, Judge Warner, then Judge of the Coweta Circuit, sanctioned the bill. By consent the matters were referred to Joseph Pou, Esq., as auditor, to fix the amounts and priorities of the several claimants, etc. He allowed Bethune fees, held that the instructions by Miller to Bethune, and Bethune's obligations, pursuant thereto, given to Miller's creditors, gave to said creditors no preference in said choses in action or their proceeds, and that all of

Walton, *et al.*, *vs.* Bethune, *et al.*

them were liable to the attaching creditors, according to the priorities obtained by said attachments. One of the summons of garnishment was returnable to the Inferior Court of the county, but was served less than twenty days before the Court, and for this the auditor held that it was void. As to the others he fixed their amounts and priority.

The Judge being interested, and exceptions having been filed to this report, by consent James S. Walker was made Judge, with power to decide both upon the law and facts.

He decided that the garnishment returnable to the Inferior Court was not void, but had priority as to the surplus in Bethune's hands after discharging his said obligations; that said obligations and Miller's instructions gave priority to the several holders of said obligations according to their terms as between each other, and as against the attaching creditors. He ordered the Powell land sold according to the prayer; that Bethune should, after taking out his fees allowed by the auditor, turn over the balance of said choses in action, and their proceeds, to George A. Forbes, Esq., who was the attorney for the attaching creditors, that Forbes should collect and pay the proceeds to the attaching creditors according to their statutory priorities, and that the garnishments on Gorman and Bethune, and the attachments against the land be perpetually enjoined.

Those creditors who by this decree were prejudiced excepted thereto, and assign it as erroneous.

B. HILL, FORBES, WALLACE, for plaintiffs in error.

WILLIS & WILLIS, MATTHEWS, BETHUNE, for defendants in error.

HARRIS, J.

This case comes up from the decision of James S. Walker, Esq., who by the authority of our statute, was appointed Judge, *pro hac vice.*

Attachments returnable to the Superior Court of Talbot county, had issued at the instance of plaintiffs in error

22

against the property of Miller. Marion Bethune, attorney at law, but at the same time the agent of Miller, in the settlement of his debts, was garnisheed by plaintiffs in error, to pay over to their claims the note of Gorman, or it proceeds, which had been placed in his, (Bethune's,) hands, as agent for Miller, when he left on an alleged visit to Florida. Apprehending vexation and expense from the course pursued by some of the creditors of Miller, and to protect himself against individual liability, he filed his bill for direction and prayed an injunction against the garnisheeing creditors, alleging in his bill that Miller placed the note of Gorman in his hands as an agent, with instructions to pay the proceeds, when collected, (the note having some time to run before its maturity,) to certain named creditors; and if there was any remainder after this was done, then to any other just debt against said Miller.

Under this specific authority, he alleges that, upon the surrender up by such designated creditors of the notes and evidences of debt held by them against his principal, to the extent of their separate demands, he gave his written promise to each of said creditors, to pay their respective demands, when he should have collected the note of Gorman ; that in this mode he took up the notes of Miller, nearly to the extent of the amount of Gorman's, and that his individual claims against Miller, as his attorney at law, and as his agent in the collection of Gorman's note and settling with Miller's creditors, for fees and reasonable commissions, were more than sufficient to cover the balance unappropriated of Gorman's note ; that after making this arrangement, he, the said Bethune, held the note of Gorman no longer as Miller's property, but as the trustee for the creditors who had surrendered up to him their evidence of debt against Miller, and to pay himself, as one of Miller's creditors, and prayed upon this statement of facts substantially, a perpetual injunction of the garnishments issued against him at the instance of the attaching creditors.

The plaintiffs in error have earnestly insisted before us that Bethune had no authority to make any such an arrangement as

Walton, *et al.*, *vi.* Bethune. *et al.*

he did ; none to pay the designated creditors, until Gorman's note had been collected, and that he should have waited until then.    It may be conceded, that in words no power was given to Bethune to take up the notes of Miller as he did, and at *the time* they were taken up ; yet no good reason was assigned, or occurs to us, why he should be held liable for effectually executing the power given him, since that power was not exceeded, and by the arrangement made with the favored creditors, they received the preference intended them by their debtor.

It was a complete and substantial compliance with his instructions to collect the note of Gorman and pay to the named creditors, as much so as if Bethune had waited until the note matured and received the proceeds of it from Gorman, and then applied them to the payment of the same creditors.    Can it be questioned in a Court of Equity but that such designated creditors, who surrendered up to Bethune, as agent of Miller, their claims as paid under the engagement made with them, thereby acquired in the unpaid note of Gorman, an interest, and ownership in it to the extent of their claims, and that together with Bethune as creditor, their aggregate demands absorbing the entire amount of Gorman's note, the note of Gorman became by such arrangement, and from its date, the absolute property of these creditors, and that it ceased altogether to be any longer the property of Miller?

The attachments and garnishments having issued subsequently to such arrangements, Bethune was not the holder of Gorman's note as Miller's property, and consequently was not amenable to garnishment therefor.    The record evinces that Bethune, the agent of Miller, in good faith performed the duty imposed on him by his principal, and in our view of the case, not having transcended in spirit his authority, it is the office and duty of the Court of Equity to protect him against being compelled to respond to the garnishments, for the note of Gorman, as the property of Miller.    The injunction in the case should be made perpetual.

We affirm the judgment below.